**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| KOMORI AMERICA CORPORATION, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. |
| | ) | |
| ABSOLUTE GRAPHIC TECHNOLOGIES | ) | |
| USA, INC., and BRINKMANN PUMPS | ) | |
| INC., | ) | |
| | ) | **JURY TRIAL DEMANDED** |
| Defendants. | ) | |

## COMPLAINT

Plaintiff KOMORI AMERICA CORPORATION ("Komori" or "Plaintiff") by and through its undersigned counsel REINHOLD F. KRAMMER, PATRICK KELLY, and MASUDA FUNAI EIFERT & MITCHELL, LTD., states for its Complaint against Defendants ABSOLUTE GRAPHIC TECHNOLOGIES USA, INC. ("AGT") and BRINKMANN PUMPS INC. ("Brinkmann") (AGT and Brinkmann are collectively, at times, referred to herein as "Defendants") as follows:

## PARTIES

1.     Komori is an Illinois corporation engaged in the business of selling and servicing commercial printing machines and related accessories. Komori's principal place of business is located at 5520 Meadowbrook Industrial Ct, Rolling Meadows, IL 60008.

2.     AGT is a California corporation engaged in the business of designing, manufacturing, promoting, marketing, selling and connecting industrial cooling and processing equipment throughout the United States, including Illinois in which it regularly contracts with one of its largest customers, Komori, to deliver and connect chillers for Komori's customers in Illinois

and other states. AGT's principal place of business is located at 235 Jason Ct, Corona, California 92879.

3.      Brinkmann is a Michigan corporation engaged in the business of designing, manufacturing, promoting, marketing, selling and installing pumps and fittings for industrial equipment such as AGT's chillers and industrial printing presses. Brinkmann's principal place of business is located at 47060 Cartier Dr, Wixom, MI 48393.

## JURISDICTION AND VENUE

4.      This Court has jurisdiction of this action pursuant to 28 U.S.C. §1332(a)(1) because the matter in controversy exceeds, exclusive of interest and costs, the sum of $75,000.00 and is between citizens of different States. Additionally, the Purchase Order and Terms and Conditions (defined hereinafter) that are the subject of this suit each contain a forum selection clause, specifying this judicial district as the exclusive jurisdiction and venue of any action brought by Komori.

5.      Venue is proper in this District under 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claim occurred in this District.

## FACTUAL ALLEGATIONS

6.      On or about July 9, 2021, Komori submitted a purchase order ("Purchase Order") from its principal office in Cook County, Illinois, to AGT in the amount of $47,742.48 for a combination single-zone temperature control system featuring a circulator and an Everclear filtration device ("Chiller") and related items including the Fitting as defined hereinafter. A copy of the Purchase Order and Terms and Conditions are attached as Exhibit A.

7.      The Purchase Order expressly incorporates the Terms and Conditions ("Terns and Conditions") printed on its reverse side, which state, in part: "This Purchase Order expressly limits

acceptance to the terms and conditions stated herein . . ." (Ex. A, § 1.)

8.     The Purchase Order and Terms and Conditions further provide that AGT expressly warrants that the Chiller and related items including the Fitting are "free from defects in workmanship, materials, manufacture . . ." and that the Chiller, related items such as the Fitting, and installation and connection services "compl[y] with all applicable safety codes & standards including ANSI B65-1 and B65-2." (Ex. A, Purchase Order ¶ 2; Terms and Conditions, § 7.)

9.     The Terms and Conditions provide: "The parties further agree that any claim or action brought by either party regarding this purchase order or relating to any goods or services provided hereunder shall be filed and pursued only in the state or federal courts located in Cook County, Illinois . . . Seller [AGT] hereby irrevocably consents to the jurisdiction of such courts[.]" (Ex. A, § 21.)

10.     AGT accepted the Purchase Order submitted by Komori.

11.     AGT purchased a pump fitting ("Fitting") for the Chiller from Brinkmann.

12.     On or about September 20, 2021, AGT submitted into Illinois to Komori a sales order related to the Chiller and related Fitting ("Sales Order") and delivered the Chiller and related Fitting to Mainline Printing, Inc. ("Mainline"), a customer of Komori, that same day, at the Mainline facility located at 3500 SW Topeka Blvd., Suite A, Topeka, Kansas 66611.

13.     Pursuant to the Purchase Order and Terms and Conditions, AGT delivered and connected the Chiller and the related Fitting to a commercial printing press sold by Komori ("Printing Press") and located at Mainline.

14.     The Chiller and Fitting were not integrated into the Printing Press; the Chiller and Fitting were placed separately on the floor near the Printing Press and were merely connected to the Printing Press by insulated hoses and pipes.

3

15.     On or about September 13, 2022, the Fitting of the Chiller failed, resulting in an immediate, sudden and dangerous explosion of fluid that damaged the Chiller and Printing Press in or to which the Fitting and other fittings were connected, the entire Printing Press in which the Chiller was connected, and additional printing presses and machines located in the Mainline facility.

16.     During the week of September 15, 2022, as a result of the foregoing explosion, Komori visited Mainline to inspect the damaged Printing Press, determined that the AGT and Brinkmann Fitting had prematurely failed, and performed various repairs to the press, including performing several oil and filter changes on the Printing Press in order to attempt to remove the fluid that had sprayed from the Fitting and which had worked its way into the areas of the press where it should not penetrate such as the gears and motors.  The fluid can be highly corrosive and damaging to machines.

17.     Around that same time, after Komori had advised AGT that its Fitting had failed spraying the corrosive fluid into various systems of the press to which it should not be exposed, AGT's representatives orally informed and admitted to Komori representatives located in Cook County, Illinois, that AGT knew that it had systemic problems with its fittings and was attempting to remedy the defective Brinkmann fittings used in Brinkman's chillers on Komori printing presses throughout the U.S., in general, and that it would also specifically replace the defective Fitting in the Chiller at Mainline.

18.     AGT replaced the defective Fitting in the Chiller at Mainline with a replacement fitting ("Replacement Fitting") that AGT had acquired from Brinkmann.

19.     However, the Replacement Fitting was also defective and subsequently failed, resulting in another sudden and dangerous fluid leak that damaged the Chiller in which the Fitting

was associated, the entire Printing Press in which the Chiller was connected, and additional printing presses and machines throughout the Mainline facility.

20.     During this same time period, from approximately September 2022 to early 2023, and prior thereto, AGT had shipped and continued shipping defective chillers to Komori but did not advise Komori that the chillers were defective because of defective fitting associated with them.

21.     During the week of August 5, 2024, Komori returned to the Mainline facility for another inspection, which revealed unresolved rust and other consequential and incidental damage to both the Printing Press and other machines in the facility at Mainline.

22.     The defective Fitting and Replacement Fitting (collectively, "Fittings") and the defective Chiller have resulted in damages to Komori, including, but not limited to, the costs for inspections and repairs on the Printing Press and other machines at Mainline, the replacement of various components (and potentially even the entire Printing Press), and a decrease in the value of the Printing Press and the other damaged machines at Mainline.  Mainline has asserted claims against Komori related to the defective Fittings.

23.     At all relevant times, AGT purposefully directed its business activities toward Illinois by making extensive promotion of and sales of chillers to Illinois-based companies and engaging in substantial communications with Illinois manufacturers. AGT sold the defective Chiller at issue in this litigation to Komori, an Illinois-based company, under Terms and Conditions stating that AGT irrevocably consents to the jurisdiction of Illinois courts. Even after discovering the defective Chiller, AGT continued to purposefully direct sales of additional defective chillers to Komori, the effects of which were felt by Komori's business in Illinois.

24.     At all relevant times, Brinkmann purposefully directed its business activities toward Illinois by making extensive promotion and sales of fittings and other equipment into Illinois, targeting Illinois-based manufacturers and distributors. Brinkmann sold the defective Fitting at issue to AGT, a distributor, knowing or reasonably foreseeing that the Fitting would be incorporated into or used in association with the Chiller sold by AGT to Komori, an Illinois-based corporation. Even after discovering the defect in the Fitting, Brinkmann continued to purposefully direct sales of additional defective fittings to AGT, knowing that these fittings were being sold to Komori, resulting in further harm to its Illinois-based business and giving rise to this litigation.

## COUNT I
### Fraud (Against AGT)

25.     Komori re-alleges and incorporates by reference Paragraphs 1-23 of its Complaint as if fully set forth herein.

26.     Unbeknownst to Komori, AGT had experienced failures of its fittings related to its chillers prior to Komori issuing the Purchase Order but failed to disclose to Komori the defective nature of AGT's fittings prior to Komori's issuance of the Purchase Order.  Had Komori known the true defective nature of AGT's fittings, Komori would not have issued the Purchase Order for the Chiller and related Fitting.  Despite knowing the defective nature of the Fitting and without advising Komori of the same, AGT accepted Komori's Purchase Order, delivered and connected the Chiller and Fitting to the Printing Press, and allowed Komori's customer Mainline use the defective Chiller and Fitting knowing that at some point, the Fitting would experience a catastrophic failure with a substantial likelihood of causing extensive damage.

27.     In or about September 2022, only after the Fitting failed, did AGT representatives finally orally inform and admit to Komori representatives located in Cook County, Illinois, that AGT fittings had systemic defects and failures and that AGT was in the process of remedying or

6

had attempted to remedy the defects by correcting the defective nature or design of the fittings and by beginning to replace the defective fittings in the field and would replace the defective Fitting on the Mainline Chiller and that AGT would also replace the defective fittings at other Komori customer locations.

28.     AGT had actual knowledge that the above representations were false and intentionally concealed and failed to disclose that it had not actually remedied the defective fittings that it sold and continued to sell to Komori or install as replacements at Komori customer locations defective fittings including those with respect to the Mainline Fitting.

29.     In or about September 2022, AGT replaced the defective Fitting in the Chiller at Mainline with the Replacement Fitting, which also subsequently failed. Mainline, having lost trust in AGT and by association Komori, replaced the defective Replacement Fitting on its own and all other AGT supplied fittings on the Printing Press.

30.     From September 2022 to early 2023, while concealing its knowledge of the defect, AGT continued shipping additional defective fittings to Komori or its customers for use with Komori printing presses.

31.     Komori reasonably relied on AGT's misrepresentations to its detriment by permitting AGT to sell to Komori the Chiller and related Fitting and connect them to the Printing Press and thereafter to replace the Fitting at Mainline with the Replacement Fitting which ultimately also proved defective.

32.     Komori reasonably relied on AGT's misrepresentations to its detriment by continuing to purchase additional defective fittings from AGT or to allow AGT to install them as replacement fittings.

33.    As a result of AGT's fraudulent conduct, Komori has sustained damages, including, but not limited to, the costs for inspections and repairs on the Printing Press and other units at Mainline, the replacement of various components (and potentially even the entire $3 million Printing Press at Mainline), and a decrease in the value of the Printing Press of at least $850,000 for which Mainline is seeking compensation, and other damaged machines at Mainline.

WHEREFORE, Plaintiff Komori America Corporation respectfully requests that the Court enter a judgment against Defendant Absolute Graphic Technologies USA, Inc. and award Plaintiff damages in the amount of at least $850,000, plus prejudgment and post-judgment interest at the legal rate, plus punitive damages, attorney's fees and costs, and award Plaintiff any other and further relief the Court deems just and appropriate.

## COUNT II
### Breach of Contract (Against AGT)

34.    Komori hereby re-alleges and incorporates by reference Paragraphs 1-33 of its Complaint as if fully set forth herein.

35.    Komori and AGT entered into a valid and enforceable contract concerning the purchase, delivery and installation of the Chiller at Mainline.

36.    Komori fully performed its obligations under the contract by, among other things, paying AGT in full for the Chiller that AGT delivered and connected to the Komori Printing Press at Mainline.

37.    AGT breached the contract by, among other things, delivering a Chiller with a defective Fitting and replacing the Fitting with another defective Replacement Fitting.

38.    As a result of AGT's breach of the contract, Komori has been damaged, including, but not limited to, in the amount of $850,000, plus incidental and consequential damages, and attorney's fees and costs.

WHEREFORE, Plaintiff Komori America Corporation respectfully requests that the Court enter a judgment against Defendant Absolute Graphic Technologies USA, Inc. and award Plaintiff damages in excess of $850,000, plus incidental and consequential damages, attorney's fees and costs, and any other and further relief the Court deems just and appropriate.

**COUNT III**
**Breach of Express Warranty (Against AGT)**

39.    Komori re-alleges and incorporates by reference Paragraphs 1-38 of its Complaint as if fully set forth herein.

40.    Komori's purchase of the Chiller, including the Fittings, constituted a sale of goods by AGT.

41.    In connection with the sale, AGT expressly warranted that the Chiller would be "free from defects in workmanship, materials, manufacture . . ." and that the Chiller and installation and connection services would "compl[y] with all applicable safety codes & standards including ANSI B65-1 and B65-2." (Ex. A, Purchase Order ¶ 2; Terms and Conditions, § 7.)

42.    AGT's express warranties were a vital aspect of the basis of the bargain represented by the contract.

43.    The Chiller presented numerous defects in design, material, manufacture, and safety codes and standards, including, but not limited to, structurally deficient Fittings which resulted in a catastrophic failure and damaged the entire Printing Press and other machines at Mainline.

44.    Komori notified AGT of the nonconformities and defective condition of the Chiller, but AGT failed to cure the defects; instead, AGT replaced the defective fitting with another defective Replacement Fitting that also failed. Therefore, any limited warranties if considered part of the contract (they should not be) failed of their essential purpose.

45.     As a result of AGT's breaches of express warranty, Komori was damaged in an amount in excess of $850,000.

WHEREFORE, Plaintiff Komori America Corporation respectfully requests that the Court enter a judgment against Defendant Absolute Graphic Technologies USA, Inc. and award Plaintiff damages in excess of $850,000, plus incidental and consequential damages, attorney's fees and costs, and any other and further relief the Court deems just and appropriate.

## COUNT IV
### Breach of Implied Warranty of Merchantability
### (Against AGT)

46.     Komori re-alleges and incorporates by reference Paragraphs 1-45 of its Complaint as if fully set forth herein.

47.     The Chiller and related Fittings constitute goods, and AGT is a merchant with respect to them.

48.     AGT breached the implied warranty of merchantability in that the Chiller and Fittings were not in merchantable condition when sold or at any time thereafter and were not fit for the ordinary purposes for which they were intended to be used. The Chiller and Fittings failed and had several material defects, including, but not limited to, structurally deficient Fittings which failed and caused damages to the Printing Press and other machines at Mainline.

49.     The Chiller and Fittings did not conform to the promises or affirmations of fact made by AGT.

50.     AGT's delivery of a defective Chiller and Fittings amounts to a breach of the implied warranty of merchantability.

51.     Komori provided AGT with notice of the defect with the Chiller and Fittings.

52.     AGT failed to effectively repair or replace the defective Chiller and Fittings at any

time; instead, AGT replaced the defective Fitting with another defective Replacement Fitting that also failed.

53.     The defects were in a latent condition, known by AGT, but undiscoverable at the time of the sale. Therefore, if the exclusive remedy provision included within the warranty terms attached to AGT's Sales Order is considered part of the contract (it should not be), that warranty fails of its essential purpose.

54.     As a result of AGT's breach of implied warranty of merchantability, Komori was damaged in an amount in excess of $850,000.

WHEREFORE, Plaintiff Komori America Corporation respectfully requests that the Court enter a judgment against Defendant Absolute Graphic Technologies USA, Inc. and award Plaintiff damages in an amount in excess of $850,000, plus incidental and consequential damages, attorney's fees and costs, and any other and further relief the Court deems just and appropriate.

## COUNT V
### Breach of Implied Warranty of Fitness for a Particular Purpose
### (Against AGT)

55.     Komori re-alleges and incorporates by reference Paragraphs 1-54 of its Complaint as if fully set forth herein.

56.     The Chiller and Fittings constitute goods, and AGT is a merchant with respect to them.

57.     Komori informed AGT of the particular purpose for which AGT required the Chiller and Fittings at the time of the sale, and AGT was further aware of the particular purpose for which Komori required chillers from AGT based on the course of dealings between the parties.

58.     Komori relied on AGT's purported skill and judgment to furnish a suitable Chiller and Fittings, and AGT knew or had reason to know of Komori's reliance.

59.    The Chiller and Fittings were not fit for Komori's purposes because, among other things, they had several material defects, including but not to a defective Fitting that cracked and failed, catastrophically, resulting in damages to the Printing Press and other units at Mainline. The Chiller and Fittings did not conform to the promises or affirmations of fact made by AGT.

60.    Komori provided AGT with notice of the above defects with the Chiller and Fittings.

61.    The defects within the Chiller and Fittings amount to a breach of the implied warranty of merchantability.

62.    AGT failed to effectively repair or replace the defective Chiller at any time; instead, AGT replaced the defective fitting with another defective fitting that also failed.

63.    The defect was a latent condition, known by AGT, but undiscoverable at the time of the sale. Therefore, if the exclusive remedy provision included within the warranty terms attached to AGT's Sales Order is deemed part of the contract (it should not be), that warranty fails of its essential purpose.

64.    As a result of AGT's breach of implied warranty of fitness for a particular purpose, Komori was damaged in an amount in excess of $850,000.

WHEREFORE, Plaintiff Komori America Corporation respectfully requests that the Court enter a judgment against Defendant Absolute Graphic Technologies USA, Inc. and award Plaintiff damages in excess of $850,000, plus incidental and consequential damages, attorney's fees and costs, and any other and further relief the Court deems just and appropriate.

**COUNT VI**
**Negligence – Design and/or Manufacturing Defect**
**(Against Brinkmann)**

65.     Komori re-alleges and incorporates by reference Paragraphs 1-64 of its Complaint as if fully set forth herein.

66.     Brinkmann engaged in the design, development, manufacture, marketing, sale, and distribution of the Fittings in a defective and unreasonably dangerous condition.

67.     The defective condition of the Fittings existed at the time those products left the control of Brinkmann, and they arrived at Mainline without any material or substantial change, alteration or abuse from the condition the products were in at the time they left the control of Brinkmann and AGT.

68.     The Fittings failed to perform safely when used by Mainline in a reasonably foreseeable manner, *i.e.,* the Fittings cracked while being used for their ordinary and intended purposes, resulting in a sudden explosion of fluid throughout the Mainline facility.

69.     Brinkmann knew, or by the exercise of reasonable care should have known, that the Fittings were unreasonably dangerous but continued to design, manufacture, sell, distribute, and supply the Fittings in disregard of the foreseeable harm to end-users, namely the failure of the Fittings resulting in a sudden and dangerous explosion of fluid.

70.     Brinkmann owed a duty to all reasonably foreseeable end-users to design safe Fittings.

71.     Brinkmann breached this duty by failing to use reasonable care in the design and/or manufacture of the Fittings because the Fittings were unreasonably dangerous in that they were unreasonably dangerous when used in the manner they were intended to be used.

72.     Brinkmann also breached its duty of care by failing to use cost-effective, reasonably feasible alternative designs in the design and/or manufacturing of the Fittings. A reasonable

company under the same or similar circumstances would have designed safer and non-defective Fittings.

73.     As a direct and proximate result of Brinkmann's conduct, the original Fitting failed, resulting in a sudden and dangerous explosion of fluid that damaged the Chiller in which the Fittings were installed, the entire Printing Press in which the Chiller was connected, and additional printing presses and machines throughout the Mainline facility.

74.     As a direct and proximate result of Brinkmann's conduct, the Replacement Fitting also failed, resulting in another sudden and dangerous explosion of fluid that damaged the Chiller in which the Fittings were installed, the entire Printing Press in which the Chiller was connected, and additional printing presses and machines throughout the Mainline facility.

75.     The damage caused by the defective Fittings constitutes a showing of harm beyond disappointed commercial expectations, and Komori could not have reasonably contemplated that the Fittings designed by Brinkmann would fail, resulting in a sudden explosion of fluid that would damage the Chiller, the entire Printing Press, and other machines throughout the Mainline facility.

WHEREFORE, Plaintiff Komori America Corporation respectfully requests that the Court enter a judgment against Defendant Brinkmann Pumps, Inc. and award Plaintiff damages in an amount in excess of $850,000, plus prejudgment and post-judgment interest at the legal rate, plus punitive damages, attorney's fees and costs, and award Plaintiff any other and further relief the Court deems just and appropriate.

## COUNT VII
### Product Liability (Against Brinkmann)

76.     Komori re-alleges and incorporates by reference Paragraphs 1-68 of its Complaint as if fully set forth herein.

77.     The Fittings sold and supplied by Brinkmann to AGT were defective and unreasonably dangerous because they were susceptible to cracking and causing a sudden explosion of fluid while being used for their ordinary and intended purposes, presenting serious and substantial risks to persons and other property.

78.     The defective condition of the Fittings existed at the time those products left the control of Brinkmann, and they arrived at Mainline without any material or substantial change, alteration or abuse from the condition the products were in at the time they left the control of AGT.

79.     The defects that existed in the Fittings were a result of Brinkmann's manufacturing activities.

80.     Brinkmann failed to warn, instruct, or advise any relevant party of the dangerous and defective condition of the Fittings.

81.     The risks associated with Brinkmann's sale, supply and distribution of the Fittings exceeded and outweighed any utility or benefit from the use of the Fittings.

82.     No reasonable purchaser would expect that Fittings would be supplied by Brinkmann or any other supplier in a defective condition and without a warning that it was unsafe to use the Fittings for their ordinary and intended purpose.

83.     The defective and unreasonably dangerous condition of the Fittings resulted in sudden and dangerous explosions of fluid that damaged the Chiller in which the Fittings were installed, the entire Printing Press in which the Chiller was connected, and additional printing presses and machines throughout the Mainline facility.

84.     The defective and unreasonably dangerous condition of the Fittings were the legal and proximate cause of the damages sustained by Komori.

WHEREFORE, Plaintiff Komori America Corporation respectfully requests that the Court enter a judgment against Defendant Brinkmann Pumps, Inc. and award Plaintiff damages in an amount in excess of $850,000, plus prejudgment and post-judgment interest at the legal rate, plus punitive damages, attorney's fees and costs, and award Plaintiff any other and further relief the Court deems just and appropriate.

**JURY DEMAND**

Plaintiff Komori America Corporation hereby demands trial by jury on all issues so triable.


Dated: March 25, 2025                    Respectfully submitted,

**KOMORI AMERICA CORPORATION**

By:  */s/Reinhold F. Krammer*
    Reinhold F. Krammer
    Patrick M. Kelly
    Masuda, Funai, Eifert & Mitchell, Ltd.
    203 North LaSalle Street, Suite 2500
    Chicago, Illinois 60601
    Tel: (312) 245-7500
    Fax: (312) 245-7467
    Email: rkrammer@masudafunai.com
    Email: pkelly@masudafunai.com
    ***Attorneys for Plaintiff***