**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| KOMORI AMERICA CORPORATION, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 25-cv-03180 |
| v. | ) | |
| | ) | Judge Andrea R. Wood |
| ABSOLUTE GRAPHIC TECHNOLOGIES USA, INC., et al., | ) | |
| | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Komori America Corporation ("Komori") accuses Defendants Absolute Graphic Technologies USA, Inc. ("AGT") and Brinkmann Pumps Inc. ("Brinkmann") of providing defective components for industrial cooling units. Specifically, Komori alleges that Brinkmann negligently developed and sold a defective component to AGT, and that AGT knew the component in question was defective before it sold a product containing that component to Komori. The product later failed due to the component AGT allegedly knew was defective, causing an explosion. When AGT installed another defective component in an allegedly disingenuous attempt to remedy the first failure, the product failed again. Komori then filed this action against AGT and Brinkmann. Brinkmann now moves to dismiss Komori's Complaint against it for lack of personal jurisdiction, pursuant to Federal Rule of Civil Procedure 12(b)(2). (Dkt. No. 15.) Simultaneously, AGT moves to dismiss the fraud count of the Complaint for failure to state a claim, pursuant Federal Rule of Civil Procedure 12(b)(6). (Dkt. No. 28.) For the reasons that follow, both motions are denied.

## BACKGROUND

The following facts are drawn from Komori's Complaint.

Komori is an Illinois corporation that sells and services commercial printing presses. (Compl. ¶ 1, Dkt. No. 1.) Komori's principal place of business is Rolling Meadows, Illinois. (*Id.*) Brinkmann is a Michigan corporation that sells pumps and fittings for industrial equipment. (*Id.* ¶ 3.) Its principal place of business is Wixom, Michigan. (*Id.*) In July 2021, Komori issued a Purchase Order to AGT, a California corporation that sells and installs industrial cooling and processing equipment. (*Id.* ¶¶ 2, 6.) AGT accepted the Purchase Order and then issued a corresponding Sales Order to Komori in September 2021. (*Id.* ¶¶ 10, 12.) The Purchase Order stated that the purchased cooling device ("Chiller") and its components, including a pump fitting ("Fitting") manufactured by Brinkmann, would be "free from defects in workmanship, materials, [and] manufacture." (*Id.* ¶ 8.) But, prior to Komori issuing the July 2021 Purchase Order, AGT had already experienced failures of the fittings in its chillers. (*Id.* ¶ 26.) Those prior failures were not disclosed to Komori. (*Id.*)

On September 20, 2021, the Chiller and integrated Fitting were delivered and connected to a Komori printing press sold to Mainline Printing, Inc. ("Mainline"), a customer of Komori, in Topeka, Kansas. (*Id.* ¶¶ 12–14.) Subsequently, in September 2022, the Fitting failed, resulting in a fluid explosion that damaged the Chiller, the connected printing press, and additional printing presses and machines in the facility. (*Id.* ¶ 15.) The explosion allegedly caused at least $850,000 in damage to the printing press. (*Id.* ¶ 33.)

Later in September 2022, AGT representatives informed Komori representatives that AGT was aware of systemic problems with the fittings, was attempting to remedy the defects, would replace the defective Fitting on the Chiller at issue, and would replace defective fittings at

other Komori customer locations. (*Id.* ¶ 17.) The Fitting was replaced with another Brinkmann fitting, which also failed, resulting in further damage to the Chiller, printing press, and additional printing presses and machines in the facility. (*Id.* ¶¶ 18–19.) Throughout this period, and until early 2023, AGT continued to distribute additional defective Brinkmann fittings to Komori and to install them as subsequent replacement fittings. (*Id.* ¶ 20.) AGT did not disclose their defects. (*Id.*)

As relevant here, Count I of the Complaint alleges that AGT committed fraud pertaining to both the terms of the 2021 Purchase Order and the September 2022 promise to remedy. (*Id.* ¶¶ 26–29.) In addition, Count VI and Count VII allege negligence and products liability, respectively, against Brinkmann. (*Id.* ¶¶ 65–84.) Now, Brinkmann moves to dismiss the claims against it for lack of personal jurisdiction, pursuant to Federal Rule of Civil Procedure 12(b)(2). And AGT moves to dismiss Count I for failure to state a claim, pursuant to Federal Rule of Civil Procedure 12(b)(6).

**DISCUSSION**

For purposes of AGT's Rule 12(b)(6) motion, the Court accepts as true all well-pleaded facts in the Complaint and views them in the light most favorable to Komori, the non-moving party. *United States ex rel. Sibley v. Univ. of Chi. Med. Ctr.*, 44 F.4th 646, 652 (7th Cir. 2022). The Court must draw all reasonable inferences in Komori's favor. *Id.* Similarly, for a Rule 12(b)(2) motion, the "court will take the plaintiff's asserted facts as true and resolve any factual disputes in its favor." *Curry v. Revolution Lab'ys, LLC*, 949 F.3d 385, 392 (7th Cir. 2020) (internal quotation marks omitted). A "plaintiff need not include facts alleging personal jurisdiction in the complaint, but once the defendant moves to dismiss the complaint under" Rule 12(b)(2), "the plaintiff bears the burden of demonstrating the existence of jurisdiction." *Id.*

## I. Brinkmann's Motion to Dismiss

The Court begins with Brinkmann's motion to dismiss for lack of personal jurisdiction. When a court considers a Rule 12(b)(2) motion based on the parties' submission of written materials without holding an evidentiary hearing, "the plaintiff need only make out a *prima facie* case of personal jurisdiction." *N. Grain Mktg., LLC v. Greving*, 743 F.3d 487, 491 (7th Cir. 2014) (internal quotation marks omitted). Because it is sitting in diversity, the Court looks to Illinois's long-arm statute to determine whether Brinkmann is subject to personal jurisdiction here. *Dehmlow v. Austin Fireworks*, 963 F.2d 941, 945 (7th Cir. 1992). It is well-established, and the parties agree, that "the Illinois long-arm statute, 735 ILCS 5/2-209(c), is coextensive with the Federal Constitution's Due Process Clause." *J.S.T. Corp. v. Foxconn Interconnect Tech. Ltd.*, 965 F.3d 571, 575 (7th Cir. 2020). Thus, the Court asks only whether the exercise of jurisdiction comports with federal due process. *Id.* Specifically, the Court must determine whether Brinkmann has "sufficient 'minimum contacts' with Illinois such that the maintenance of the suit 'does not offend traditional notions of fair play and substantial justice.'" *Tamburo v. Dworkin*, 601 F.3d 693, 700–01 (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)).

Personal jurisdiction can be general or specific. Komori does not argue that this Court may exercise general jurisdiction over Brinkmann, a Michigan corporation that has its principal place of business in Michigan. *See Daimler AG v. Bauman*, 571 U.S. 117, 139 (2014) (holding that a corporation is subject to general jurisdiction in its state of incorporation or where it has its principal place of business). Accordingly, the Court limits its inquiry to whether Komori has shown that the Court may exercise specific jurisdiction over Brinkmann.

"[T]here is specific jurisdiction where '(1) the defendant has purposefully directed [its] activities at the forum state or purposefully availed [itself] of the privilege of conducting

business in that state, and (2) the alleged injury arises out of the defendant's forum-related activities.'" *Odegaard v. Bayerische Motoren Werke AG*, No. 24-CV-01121, 2025 WL 896908, at *2 (N.D. Ill. Mar. 24, 2025) (quoting *Tamburo*, 601 F.3d at 702). Moreover, as noted above, "the exercise of jurisdiction 'must also comport with traditional notions of fair play and substantial justice.'" *Id.* (quoting *Tamburo*, 601 F.3d at 702).

### A. Purposeful Availment

The Court first addresses the matter of purposeful availment. In support of its motion, Brinkmann offers the declaration of its Supply Chain Director, John Diamantis. (Second Am. Decl. of Diamantis ¶ 1, Dkt. No. 34.) In the Declaration, Diamantis asserts that Brinkmann does not have any business locations, offices, employees, or registered agent in Illinois. (*Id.* ¶¶ 5–7.) Further, he asserts that Brinkmann owns no real estate or personal property in Illinois, has no bank accounts in Illinois, does not own or operate any facilities in Illinois, and does not advertise in Illinois. (*Id.* ¶¶ 8–10.) And while he states that Brinkmann did sell its products to AGT through purchase orders with shipments to California, Brinkmann did not enter into any contract with or sell any products to Komori. (*Id.* ¶¶ 12–13.) Although Brinkmann has sales in Illinois, Diamantis asserts that Brinkmann's Illinois sales of all products peaked in 2021 at 7.4% of its total sales. (*Id.* ¶ 11.) And Brinkmann's Illinois sales of the product at issue peaked at 0.8% of total sales in 2024. (*Id.*)

Based on these facts showing a limited presence in Illinois, Brinkmann contends that personal jurisdiction is inappropriate. It also argues that it did not ship any products related to the present litigation to Illinois. And to the extent that Brinkmann admits contacts with Illinois, it asserts that its suit-related contacts are *de minimis*.

Apart from the assertion that Brinkmann does not advertise in Illinois, Komori largely accepts the facts set forth in Diamantis's declaration. But Komori nonetheless contends that Brinkmann purposefully availed itself of doing business in Illinois by placing its fittings into the stream of commerce knowing that they would reach customers in Illinois.

The stream-of-commerce theory of purposeful availment is drawn from the Supreme Court's decision in *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297–98 (1980), where the Supreme Court concluded that "[t]he forum State does not exceed its powers under the Due Process Clause if it asserts personal jurisdiction over a corporation that delivers its products into the stream of commerce with the expectation that they will be purchased by consumers in the forum State." Later, in *Asahi Metal Industry Co. v. Superior Court of California*, 480 U.S. 102 (1987), the Supreme Court addressed how the stream-of-commerce theory should be applied. But the divided Supreme Court could not agree on an approach. Justice O'Connor and three other justices would have "require[d] something more than that the defendant was aware of its product's entry into the forum State through the stream of commerce." *Id.* at 111 (plurality opinion). That "something more" might include, "for example, [the defendant] designing the product for the market in the forum State, advertising in the forum State, establishing channels for providing regular advice to customers in the forum State, or marketing the product through a distributor who has agreed to serve as the sales agent in the forum State." *Id.* at 111–12. In contrast, if a defendant is "aware that [its] final product is being marketed in the forum State," Justice Brennan and three other justices would not have required the plaintiff to show any "additional conduct directed toward the forum." *Id.* at 117 (Brennan, J., concurring) (internal quotation marks omitted). The Supreme Court therefore "left open the question whether a plaintiff making a stream-of-commerce argument needs to make an additional showing that the

defendant purposefully directed its business activities toward the forum state." *Jennings v. AC Hydraulic A/S*, 383 F.3d 546, 551 n.2 (7th Cir. 2004).

After *Asahi*, the Seventh Circuit still applies the stream-of-commerce theory in products liability cases. *B.D. ex rel. Myer v. Samsung SDI Co.* (*B.D. I*), 91 F.4th 856, 861 (7th Cir. 2024); *see also Dehmlow*, 963 F.2d at 946–47 (acknowledging that *Asahi* cast "some doubt on the future viability of the stream of commerce theory" but confirming that the theory continues to apply in the Seventh Circuit); *Morris v. Daimler Trucks N. Am., LLC*, No. 20-CV-246, 2020 WL 4436330, at *4 n.1 (S.D. Ill. Aug. 3, 2020) ("The Court is aware that it is hard to square the stream of commerce theory with the principles underlying the holding of *Bristol-Myers Squibb Co. v. Superior Ct. of Cal.*, 582 U.S. 255 (2017). . . . Nevertheless, . . . courts within the Seventh Circuit must follow *World-Wide Volkswagen* and *Dehmlow*." (internal citation modified)). Moreover, courts in the Seventh Circuit follow Justice Brennan's broader "'knowledge' version of the stream-of-commerce theory." *B.D. I*, 91 F.4th at 861. Thus, plaintiffs are not required to show that the defendant targeted the forum state. *Id.* And courts ask only whether a defendant put its products into the "stream of commerce with the knowledge and expectation that those [products] would be marketed and sold to customers in Illinois." *Odegaard*, 2025 WL 896908, at *3.

Discussing the stream-of-commerce theory, the Seventh Circuit has explained that "[i]n the context of products liability, downstream sales to consumers can support personal jurisdiction because they bear on 'the relationship among the defendant, the forum, and the ***litigation***.'" *J.S.T. Corp.*, 965 F.3d at 576 (quoting *Walden v. Fiore*, 571 U.S. 277, 284 (2014)). Where the complaint alleges that the development of a product harms consumers, a defendant's efforts "to reach consumers in a forum state . . . create[] a relationship with the forum state that

has special relevance to the litigation at issue." *Id.* Critically, "[t]he stream of commerce theory contemplates that a defendant's product may go through middlemen before reaching consumers." *Id.*

Brinkmann placed its products, including the model of fitting at issue in this case, into the stream of commerce and some of those products are regularly sold in Illinois. As Brinkmann confirms in its submissions, its total revenue from Illinois customers, from 2020 through May 2025, was substantial. (Brinkmann's Reply Ex. B, Dkt. No. 47.) Brinkmann points out that it only sold eight of the allegedly defective fittings in Illinois over that period, for a relatively small fraction of its overall revenue. (Brinkmann's Reply Exs. A, B; Second Am. Decl. of Diamantis ¶ 11.) But it cannot dispute that its products entered the stream of commerce and arrived in Illinois.

Komori has also introduced evidence showing that Brinkmann employed a sales representative who was responsible for sales in Illinois. (Decl. of Patrick M. Kelly Ex. D, Dkt. No. 59-3.) And Komori's evidence shows that Brinkmann sends all its sales representatives to the International Manufacturing Technology Show in Chicago every other year for the purpose of promoting its products. (Decl. of Patrick M. Kelly Exs. A, B, C, Dkt. Nos. 59, 59-1, 59-2; Ex. E, Diamantis Dep. 45:5–8, 100:11–107:19, Dkt. No. 59-4.) Further, Komori presented evidence that Brinkmann regularly repairs or replaces parts for customers and end users in Illinois. (Ex. E, Diamantis Dep. 81:15–84:8, 84:20–24, 85:12–86:18.) Brinkmann does not controvert this evidence. Regardless, at this stage, any factual disputes must be resolved in Komori's favor. *Curry*, 949 F.3d at 392. Considering Brinkmann's efforts to sell its products in Illinois, its considerable annual Illinois sales ranging from hundreds of thousands to over a million dollars in revenue, and its work repairing or replacing its products in Illinois, the Court concludes that

Brinkmann had both "the knowledge and expectation that" its products would make their way to Illinois. *Odegaard*, 2025 WL 896908, at *3.

Rather than challenge the evidence offered by Komori, Brinkmann argues that the Court should only focus on the Illinois sales of the specific model of fitting in question—only eight in number over four and a half years. Brinkmann contends that its sales of the relevant part are *de minimis* and insufficient to support specific personal jurisdiction. However, the law sets no minimum threshold of sales necessary for specific personal jurisdiction. Unlike general jurisdiction, the number of contacts a defendant has with the forum is not determinative of specific jurisdiction. Indeed, a single contact can suffice to establish purposeful availment. *B.D. ex rel. Myers v. Samsung SDI Co.* (*B.D. II*), 143 F.4th 757, 770 (7th Cir. 2025); *see also Illinois v. Hemi Grp. LLC*, 622 F.3d 754, 755 (7th Cir. 2010) (upholding specific personal jurisdiction where the only Illinois customer for the relevant product was a single law enforcement officer who initiated the sales).

The Court is not aware of any authority establishing a *de minimis*-sales exception to specific personal jurisdiction. The cases that Brinkmann cites in support of its *de minimis*-sales defense are not applicable here. Brinkmann relies on language from *Richter v. INSTAR Enterprises International, Inc.*, but that language is about general jurisdiction and has no bearing on when specific jurisdiction is justified. 594 F. Supp. 2d 1000, 1007 (N.D. Ill. 2009) (rejecting ***general jurisdiction*** because the defendant's sales in the forum state were not "substantial"). And while *Guinness World Records Ltd. v. Doe* does address specific jurisdiction, it deals only with electronic sales efforts (*e.g.*, a passive website and some marketing emails) resulting in extremely limited sales. 664 F. Supp. 2d 927, 928–29 (N.D. Ill. 2009); *cf. Mehta v. Starwood Hotels & Resorts, LLC*, No. 21-CV-01591, 2024 WL 4346611, at *4 (N.D. Ill. Sept. 30, 2024)

("In the Seventh Circuit, the test for specific personal jurisdiction in cases arising from websites and electronic communications requires a courts [sic] to assess whether a defendant purposefully exploited the market beyond simply operating an interactive website accessible in the forum state and sending emails to people who may happen to live there." (alterations and internal quotation marks omitted)). The court in *Guinness World Records* specifically contrasts those electronic efforts with "in-forum solicitation via . . . a direct salesman's visits." 664 F. Supp. 2d at 928. Were such in-forum solicitations involved in the defendant's sales efforts, the court reasoned, "the fact that [the] resulting Illinois sales proved to be minimal would not save it from being amenable to suit in this jurisdiction." *Id.* In-forum solicitation by Brinkmann, among other contacts, is exactly what Komori has alleged and offered evidence of here. Accordingly, *Guinness World Records* undercuts, rather than supports, Brinkmann's argument. The Court therefore concludes that Brinkmann "purposefully availed itself of doing business in Illinois under the stream-of-commerce theory." *Odegaard*, 2025 WL 896908, at *4.

### B. Relatedness of Contacts

Turning to the second prong of the specific jurisdiction analysis, the Court must determine whether there is sufficient connection between this lawsuit and Brinkmann's activities. The "most common formulation of the rule demands that the suit arise out of ***or relate to*** the defendant's contacts with the forum." *Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*, 592 U.S. 351, 362 (2021) (emphasis added and internal quotation marks omitted). So, Komori must show that its alleged injury arose from or relates to Brinkmann's forum-related activities. "In products liability suits like this one, that is not difficult." *Neterval-Quiel v. CMC SRL*, No. 21-CV-1279, 2022 WL 4131921, at *5 (E.D. Wis. Sept. 12, 2022). As noted above, "in the products liability context, the defendant creates a relationship to the forum state relevant to the litigation simply by

reaching out to consumers in that state." *Odegaard*, 2025 WL 896908, at *4; *see also J.S.T. Corp.*, 965 F.3d at 576 ("[W]hen a [products liability] defendant takes steps to reach consumers in a forum state, it has created a relationship with the forum state that has special relevance to the litigation at issue."). And, as the Supreme Court held in *Ford Motor Co.*, there need not be a strict causal relationship between a defendant's forum-state contacts and the litigation. *Ford Motor Co.*, 592 U.S. at 362.

Brinkmann's sales efforts in Illinois, its actual sales in Illinois, and its shipment of replacement parts—including the same model of fitting—to Illinois relate to this litigation. Although the allegedly defective Fitting failed in Kansas, the same model of fitting could have failed in Illinois just as easily. Moreover, the alleged harm to Komori's business was experienced by the corporation in Illinois. That Brinkmann sold the product in question to AGT in California, rather than to Komori directly, does not change the analysis. As observed above, "[t]he stream of commerce theory contemplates that a defendant's product may go through middlemen before reaching consumers." *J.S.T. Corp.*, 965 F.3d at 576. That is what happened here. Although it first went through AGT, Brinkmann's product eventually reached Komori and caused the alleged injury. Komori has sufficiently shown that its claims relate to Brinkmann's Illinois contacts.

### C. Fair Play and Substantial Justice

Finally, Brinkmann argues that subjecting it to personal jurisdiction in this Court would offend traditional notions of fairness and justice. In evaluating fairness, the Court looks "to several factors, including the burden on the defendant, the interests of the plaintiff and the forum state, the interest in efficient resolution of the dispute, and the shared interest of states in furthering certain substantive social policy." *B.D. I*, 91 F.4th at 862. Brinkmann is a manufacturer that does business throughout North America and sold millions of dollars' worth of

its products in Illinois in recent years. It is difficult to see how Brinkmann could not "reasonably anticipate being haled into court" in Illinois. *World-Wide Volkswagen Corp.*, 444 U.S. at 297; *see also Asahi*, 480 U.S. at 117 (Brennan, J., concurring) ("The stream of commerce refers not to unpredictable currents or eddies, but to the regular and anticipated flow of products from manufacture to distribution to retail sale. As long as a participant in this process is aware that the final product is being marketed in the forum State, the possibility of a lawsuit there cannot come as a surprise."). Similarly, requiring a Michigan corporation to defend a suit in what is essentially a neighboring state does not appear to place a significant burden on the defendant. And "Illinois has a substantial interest in ensuring that there are remedies available for its citizens who have been injured by a defective product." *Odegaard*, 2025 WL 896908, at *4. As a result, considering the relevant factors, the Court concludes that Brinkmann is fairly subject to personal jurisdiction in Illinois.

* * *

Having established that it may exercise specific personal jurisdiction over Brinkmann, the Court denies Brinkmann's motion to dismiss.

## II. AGT's Partial Motion to Dismiss

The Court next turns to AGT's motion. To survive a motion to dismiss under Rule 12(b)(6), a complaint must first comply with the basic plausibility requirement of Federal Rule of Civil Procedure 8, which requires "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Detailed factual allegations are not required under this standard. *Twombly*, 550 U.S. at 555. Put simply, "[u]nder Rule 8, a plaintiff only needs to give enough details about the subject-matter of the case to present a story that holds

together." *United States ex rel. Presser v. Acacia Mental Health Clinic, LLC*, 836 F.3d 770, 776 (7th Cir. 2016) (internal quotation marks omitted).

But since the claim at issue alleges fraud, Federal Rule of Civil Procedure 9(b)'s heightened pleading standard also applies. Rule 9(b) requires that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b). To satisfy this particularity requirement, the complaint must "describe the who, what, when, where, and how of the fraud—the first paragraph of any newspaper story." *Presser*, 836 F.3d at 776 (internal quotation marks omitted). And while "Rule 9 . . . excuses a party from pleading" the requisite mental state "under an elevated pleading standard. It does not give him license to evade the less rigid—though still operative—strictures of Rule 8." *Iqbal*, 556 U.S. at 686–87.

To state a claim for fraud under Illinois law, the plaintiff must allege: "(1) a false statement of material fact; (2) defendant's knowledge that the statement was false; (3) defendant's intent that the statement induce the plaintiff to act; (4) plaintiff's reliance upon the truth of the statement; and (5) plaintiff's damages resulting from reliance on the statement." *Rudy v. D.F. Stauffer Biscuit Co.*, 666 F. Supp. 3d 706, 723 (N.D. Ill. 2023) (internal quotation marks omitted); *see also Semmens v. Semmens*, 396 N.E.2d 1282, 1286 (Ill. App. Ct. 1979) (explaining that a false statement is material when the other party would have acted differently had they known the truth).

In seeking dismissal, AGT argues that Komori has failed to satisfy the requirements of Rule 8 for the knowledge and intent elements of fraud or the requirements of Rule 9(b) for those

elements that must be alleged with particularity. In the end, however, the Court concludes that Komori has pleaded a plausible claim of fraud.

### A. Fraudulent Misrepresentation

The first element of common-law fraud is a false statement of material fact made by the defendant. *Rudy*, 666 F. Supp. 3d at 723. The Complaint identifies at least two alleged false statements of material fact. The earliest was AGT's adoption, in July 2021, of the Purchase Order's statement that the Chiller would be "free from defects in workmanship, materials, [and] manufacture." (Compl. ¶ 8.) The other allegedly false statement was AGT's representation in September 2022 that it was attempting to remedy the situation by replacing defective fittings, despite its continued use of the same type of fitting. The Complaint further alleges that AGT continued to send defective products to Komori from approximately September 2022 until early 2023, without informing Komori that the products contained defective fittings.

The parties do not dispute that Komori has identified the July 2021 Purchase Order as an alleged falsehood.[1] With respect to the statement in September 2022 that AGT was attempting to remedy the problems with its fittings, AGT argues that Komori has not alleged any false statement. That is because, AGT contends, the alleged statements admit that the defects were still in the process of being remedied. As alleged, the statements did not falsely assert that the defects had been resolved. However, drawing all reasonable inferences in Komori's favor, the statement that AGT was replacing other fittings at other facilities implied that a replacement part would fix the problem with the Chiller at Mainline. That implicit conclusion was inaccurate, and Komori alleges it was knowingly false. That is enough at this stage. *See AMPAT/Midwest, Inc. v. Ill. Tool*

[1] AGT separately argues that Komori cannot base its fraud claim on the terms of the Purchase and Sales Orders because such a claim would be duplicative of Komori's breach of contract claim. The Court addresses that argument below.

*Works Inc.*, 896 F.2d 1035, 1040 (7th Cir. 1990) (finding the implication that replacing a defective product with another from a different production run would prevent the problem from recurring to be a misleading statement). Komori has plausibly alleged a false statement of fact made by AGT's representatives in September 2022.

A defendant must also know that its statement was false. As to the Purchase Order, AGT argues that Komori has not alleged underlying facts to support an inference that AGT knew that the Brinkmann fittings were defective, and thus that its statement was false, at the time of the July 2021 sale. A plaintiff must allege such underlying facts because, "[a]lthough Rule 9(b) does not require 'particularity' with respect to the defendants' mental state, the complaint still must afford a basis for believing that plaintiffs could prove scienter." *DiLeo v. Ernst & Young*, 901 F.2d 624, 629 (7th Cir. 1990). Put differently, while "it is sufficient to plead knowledge generally, . . . [a plaintiff] must allege sufficient underlying facts from which a court may reasonably infer that [the defendant] acted with the requisite state of mind." *Advanced Pain Consultants v. Richmond*, No. 15 C 479, 2015 WL 4972231, at *3 (N.D. Ill. Aug. 18, 2015) (internal quotation marks omitted). Bearing in mind that "fair notice is perhaps the most basic consideration underlying Rule 9(b)," the Court concludes that the alleged facts are enough to reasonably infer AGT's knowledge. *Vicom, Inc. v. Harbridge Merch. Servs., Inc.*, 20 F.3d 771, 777–78 (7th Cir. 1994) (internal quotation marks omitted).

Komori alleges that the Fitting failed in September 2022 because it was defective. According to Komori, AGT representatives then admitted to Komori that AGT knew there were systematic problems with its fittings. As alleged, by September 2022 at the latest, AGT knew the fittings (beyond just the Fitting installed at Mainline) had widespread defects. A claim of fraud, however, requires that AGT knew the fittings were defective at the time of the allegedly false

statement (*i.e.*, the date of the sale in July 2021). So, the timing of AGT's knowledge is key. AGT contends that, even accepting Komori's allegations as true, "it is possible (and most likely) that AGT discovered problems with the Brinkmann fittings at some point after AGT signed Komori's Purchase Order in July of 2021, but before an AGT representative made a statement to Komori in September of 2022." (AGT's Mot. to Dismiss 9 (emphasis omitted).)

AGT's version of events may be possible. Indeed, as AGT argues, that timeline might be proven correct at a later stage of the litigation. But at the pleading stage, the standard is plausibility and the Court draws all reasonable inferences in the plaintiff's favor. AGT asks the Court to resolve a disputed fact in its favor, something the Court cannot do. AGT's argument also ignores Komori's allegation that AGT had already experienced fitting failures by the time Komori issued the Purchase Order in July 2021. Accepting this factual allegation as true, it is reasonable to infer that the earlier failures made AGT aware that the fittings were broadly defective before it accepted Komori's Purchase Order in July 2021. In urging the Court to find otherwise, AGT focuses a question of fact—exactly when it learned the fittings were defective—that is "within the defendant's exclusive knowledge." *Jepson, Inc. v. Makita Corp.*, 34 F.3d 1321, 1328 (7th Cir. 1994). Without the benefit of discovery, Komori is unlikely to find a "smoking gun" pinpointing exactly when AGT gained knowledge of the alleged defects. Inference is all that is available to Komori at this stage. And the facts alleged support a reasonable inference of AGT's knowledge as of July 2021.

Almost as an aside, AGT briefly argues that Komori must allege facts showing it both knew the specific nature of the defect with the Brinkmann fittings and knew that the specific defect was present in all Brinkmann fittings. The Court is not persuaded such a showing is necessary. If AGT knew there was any systemic defect in the fittings, then it was misleading to

warrant that the product containing the Fitting was free of all defects. Specific knowledge of the defect's nature would not change that. Similarly, so long as AGT knew that the defect was widespread in the model of fitting in question, it is not necessary to show that AGT knew every Brinkmann fitting would fail. *See Newman v. Metro. Life Ins. Co*., 885 F.3d 992, 1003 (7th Cir. 2018) ("In Illinois, a defendant knowingly misrepresents a fact if it makes a statement with a reckless disregard for its truth or falsity." (internal quotation marks omitted)). Komori alleges that AGT had experienced multiple failures of the same model of fitting and was aware of systemic problems with that model of fitting. That is enough.

The final contested element of fraud is whether AGT intended to induce Komori's action through its allegedly false statements. Komori argues that AGT's statements were made as part of efforts to complete the 2021 sale and to maintain an ongoing business relationship. When a seller provides an express warranty to a buyer, the seller usually intends for the buyer to rely on the warranty. Indeed, it is reasonable to infer that Komori was unlikely to have gone through with the purchase without AGT's allegedly false statement. Further, it is reasonable to infer that AGT, hoping to continue selling to Komori, intended to induce Komori to continue as a customer when it stated that it was attempting to remedy the product defects. Viewed in the light most favorable to Komori, the Complaint plausibly alleges facts showing AGT's intent to induce action by Komori.

The parties do not dispute that Komori relied on AGT's alleged statements or that Komori experienced damages resulting from that reliance. Accordingly, the Court need not address the fourth and fifth elements of common-law fraud. Thus, the Court finds that the Complaint plausibly alleges facts satisfying all five elements of Illinois common-law fraud.

Nonetheless, AGT claims that Komori has failed to satisfy the particularity requirement of Rule 9(b). The Court disagrees and finds that Komori has adequately detailed the requisite "who, what, when, where, and how" of the alleged fraud. *Presser*, 836 F.3d at 776 (internal quotation marks omitted). Beginning with "who," AGT contends that Komori was required to allege the identity of the individual representative who accepted the Purchase Order or made the September 2022 statements. But "[w]ith regard to the 'who' requirement, a plaintiff provides proper Rule 9(b) notice by identifying the individuals making the alleged misrepresentations as employees of the defendant." *Pressalite Corp. v. Matsushita Elec. Corp. of Am.*, No. 02 C 7086, 2003 WL 1811530, at *8 (N.D. Ill. Apr. 4, 2003). By identifying an AGT representative as the speaker, Komori has alleged enough.[2]

Next, the Complaint alleges that the Purchase Order was accepted between July and September 2021, that the Sales Order was submitted "[o]n or about September 20, 2021," and that the representative's statement was around "the week of September 15, 2022." (Compl. ¶¶ 6, 10, 12, 16–17.) These dates are specific enough to plead "when" the statements were made with particularity. *See Pressalite Corp.*, 2003 WL 1811530, at *9 ("To plead the 'when' requirement properly, a plaintiff need not identify the precise time at which an alleged misrepresentation was made but may provide a general time." (internal quotation marks omitted)).

---

[2] AGT cites *Connick v. Suzuki Motor Co.*, 675 N.E.2d 584, 591 (Ill. 1996), for the proposition that Komori must also allege the identity of the Komori representative that heard the statements and relied on them. As an initial matter, *Connick* was decided under Illinois state-law pleading requirements and does not speak to the requirements for pleading fraud in federal court. And in any case, *Connick* was brought as a putative class action on behalf of individual purchasers of sport utility vehicles. Yet the complaint "fail[ed] to state which, if any, of the plaintiffs heard [the defendant's] representations and relied on them." *Id*. Here, there is one corporate plaintiff, Komori, and the Complaint is clear in alleging that Komori received and relied upon AGT's alleged misrepresentations.

As to "where" and "how," the Complaint adequately alleges that the statements were made through written and oral communications in Cook County, Illinois. Such allegations are sufficiently particular. The "what" is not disputed. Therefore, because Komori has pleaded the circumstances of the alleged fraud with particularity, the Court finds that Komori has successfully stated a claim for fraud.

### B. Fraudulent Concealment

Count I of the Complaint, which is simply title "Fraud," could also be construed as alleging fraudulent concealment against AGT.[3] In Illinois, "[i]n addition to the basic elements of fraud, fraudulent concealment requires a plaintiff to allege that the defendant concealed a material fact when he was under a duty to disclose that fact to plaintiff." *RVassets LTD v. Marex Cap. Markets Inc*., No. 23 C 14192, 2024 WL 1928692, at *10 (N.D. Ill. May 2, 2024) (internal quotation marks omitted); *see also Greenberger v. GEICO Gen. Ins. Co*., 631 F.3d 392, 401 (7th Cir. 2011) (explaining that a duty to disclose exists only when the parties have a special relationship that would create one). Importantly, a plaintiff asserting a fraudulent concealment claim has the burden of pleading the existence of a duty to disclose. *Martin v. State Farm Mut. Auto. Ins. Co*., 808 N.E.2d 47, 52 (Ill. App. Ct. 2004).

Komori has met this burden. In a similar case, the Seventh Circuit addressed a sale of defective screws used to anchor windows despite the seller's awareness that they would fail. The Seventh Circuit held that, as part of the duty of good faith, a manufacturer's failure to disclose to buyers known defects when disclosure would enable buyers to minimize their losses may rise to the level of fraud:

[3] AGT argues that Komori has only pleaded common-law fraud, not fraudulent concealment. But "federal-court plaintiffs are not required to plead legal theories in their complaints." *Lovelace v. Gibson*, 21 F.4th 481, 488 (7th Cir. 2021).

> A seller who has reason to know that the failure of his product to perform in the manner warranted is due to a defect in the product can neither keep silent while knowing the nature of the problem ***nor pretend that the failure is really due*** . . . ***to an isolated problem that will be corrected by the shipment of replacement product***. Such a seller commits fraud.

*AMPAT/Midwest, Inc.*, 896 F.2d at 1040–41 (emphasis added). Similarly, Komori alleges that an AGT representative acknowledged the company's awareness of pervasive faults in Brinkmann fittings, its attempts to correct them, and its intention to replace the fittings at other locations. Meanwhile, AGT allegedly failed to disclose the defects at the time of the Purchase Order or in subsequent transactions; nor did it disclose that it continued to use defective fittings as replacements. Thus, the Court finds that Komori has alleged facts showing that AGT had a duty to disclose material facts, successfully stating a claim for fraudulent concealment.

### C. Overlapping Claims

Finally, AGT argues that because Illinois law does not permit duplicative fraud and breach-of-contract claims, Komori cannot assert fraud claims based on the terms of the Purchase or Sales Orders. As AGT aptly points out, the Illinois Supreme Court has stated that "[a] breach of contractual promise, without more, is not actionable under the Consumer Fraud Act." *Avery v. State Farm Mut. Auto. Ins. Co*., 835 N.E.2d 801, 844 (Ill. 2005). The *Avery* court then clarified that, as the first element of consumer fraud, "a deceptive act or practice involves more than the mere fact that a defendant promised something and then failed to do it. That type of misrepresentation occurs every time a defendant breaches a contract." *Id.* (citations and internal quotation marks omitted); *see also Greenberger*, 631 F.3d at 401 (extending this reasoning beyond the Consumer Fraud Act to common-law fraud claims).

However, Komori's Complaint alleges "affirmative acts of misrepresentation and not a simple breach of contract." *Dyson, Inc. v. Syncreon Tech. (Am.), Inc*., No. 17 C 6285, 2019 WL 3037075, at *5 (N.D. Ill. July 11, 2019) (internal quotation marks omitted). In contrast to simple

breach of contract, Komori alleges that even after AGT became aware of extensive defects, it still accepted the 2021 Purchase Order, failed to disclose those defects, and continued to use the defective fittings. Komori further alleges that AGT deceptively promised to remedy the defective fittings in September 2022, but instead simply installed more of the same. Viewed in the light most favorable to Komori, these allegations represent more than mere failures to perform a contractual promise. They constitute a pattern of deceptive practices spanning over a year and multiple transactions. *See, e.g.*, *Pressalite Corp.*, 2003 WL 1811530, at *7 (considering similar allegations). Accordingly, the claim is factually distinct from the alleged breach of contract and is not duplicative.

* * *

In sum, Komori has stated a plausible claim for fraud sufficient to survive AGT's motion to dismiss.

**CONCLUSION**

For the reason stated above, Defendant Brinkmann Pumps Inc.'s motion to dismiss for lack of personal jurisdiction (Dkt. No. 15) and Defendant Absolute Graphic Technologies USA, Inc.'s partial motion to dismiss for failure to state a claim (Dkt. No. 28) are both denied.

ENTERED:

Dated: September 22, 2026

Andrea R. Wood
United States District Judge